IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALEXANDER J. WILLIAMS,

    Plaintiff,

v.

COMMISSIONER,
Social Security Administration,

    Defendant.

Civ. No. 6:16-cv-01543-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Alexander J. Williams ("Williams") seeks judicial review of the Commissioner's decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is not based on proper legal standards and is not supported by substantial evidence, the decision is AFFIRMED.

## **BACKGROUND**

Williams filed his application for SSI on September 26, 2012, alleging a disability onset date of August 1, 2012. Tr. 56.[1] After the Commissioner denied the applications initially and upon reconsideration, Williams requested a hearing before an administrative law judge ("ALJ"), which was held on November 5, 2014. Tr. 27-55. On January 16, 2015, ALJ Marilyn S. Mauer issued a written decision finding Williams not disabled. Tr. 10-20. On May 23, 2016, the

---

[1] "Tr." refers to the transcript of the Social Security Administration's ("SSA") administrative record.

1 - OPINION AND ORDER

Appeals Council denied Williams' subsequent request for review, so the ALJ's decision became the final decision of the Commissioner. Tr. 1-3. This appeal followed.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, I review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") utilizes a five-step sequential evaluation to determine disability. 20 C.F.R. §§ 404.1520; 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden then shifts to the Commissioner for step five. 20

C.F.R. § 404.1520. At step five, the Commissioner must demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is found not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

At step one, the ALJ determined Williams had not worked since September 26, 2012, the application date. At step two, the ALJ concluded that Williams had the following severe impairments: chronic right shoulder pain status post multiple dislocations and four surgeries for SLAP repair; Bankart lesion; rotator cuff repair and subacromial decompression; and chronic migraine headache. Tr. 12. Between steps three and four, the ALJ assessed Williams' RFC. She determined Williams retains the capacity to perform light work, except that he is limited to lifting 20 pounds occasionally and 10 pounds frequently with the left upper extremity only and cannot perform any lifting with the right upper extremity; due to shoulder pain when his arm is dependent, he can stand and walk no more than four out of eight hours; he can sit without limitation; he can never perform forceful pushing or pulling with the right upper extremity; he can occasionally reach in all planes with his right upper extremity; he can never climb ladders, ropes, and scaffolds; he should not be exposed to hazards such as unprotected heights or large moving equipment; he can frequently balance, stoop, and crouch; he can occasionally kneel and crawl; he has no limits in the use of his left hand; he can use his right hand for unlimited handling, fingering, and feeling when the arm is supported close to his body and for occasional handling, fingering, and feeling when the arm is not supported close to his body; and due to the

3 - OPINION AND ORDER

impact of pain on concentration, persistence, and pace, he can understand, remember, and carry out only simple instructions. Tr. 14-15. At step four, the ALJ found Williams did not have any past relevant work. Tr. 18. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Williams could perform jobs that exist in significant numbers in the national economy, including final inspector of hand packaging processes, loader monitor, and toll collector, parking. Tr. 19.

William contends the ALJ: (1) erroneously discredited his symptom testimony; (2) erroneously rejected lay witness testimony provided by his wife, (3) failed to consider the effects of his migraines in formulating an RFC; and (4) erroneously found plaintiff could perform other work in the national economy based on the assessed RFC.

I. Credibility Analysis

Williams argues the ALJ erred by rejecting her subjective symptom testimony. An ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007). However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*,

466 F.3d 880, 882 (9th Cir. 2006). Nonetheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

Williams argues the ALJ erred by finding that his lack of consistent employment raised a question as to whether Williams' unemployment was actually due to his impairments. Tr. 16. When evaluating the credibility of a claimant's allegations, an ALJ is allowed to consider whether the claimant had a poor work history prior to his alleged disability onset date. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Here, the ALJ's finding was based on substantial evidence, as Williams' last employment ended nearly two years before he allegedly became disabled. Tr. 30-31. Williams argues that a person of his age (24) would not be expected to have a "significant connection to the workforce," but even assuming evidence could be interpreted to support more than one interpretation of the record, the Court is bound to uphold the rational interpretation of the ALJ. *Batson*, 359 F.3d at 1193. Williams further contends that his work history was poor because he was in special education classes, but that spurious argument is squarely contradicted by the record. *See* Tr. 42 (Williams recounting some of his favorite novels during the hearing); 162 (self-report indicating Williams was not in special education classes).

Williams further contends that the ALJ erred by finding that his doctor concluded "that if he did not require [narcotic] medication his pain must not be so great as he alleged." Tr. 16-17. Williams argues instead that he stopped taking Vicodin and Percocet because those medications caused undesirable side effects. The ALJ's finding, however, is supported by substantial evidence: by April 2014, Williams' treating provider noted that Williams was not on any prescription pain medications, had not taken any pain medication the previous month and expressed interest in using medical marijuana instead. Tr. 330. As above, the ALJ's

5 - OPINION AND ORDER

interpretation of the record was rational even if other interpretations are possible, and therefore the ALJ's finding is affirmed. *Batson*, 359 F.3d at 1193.

The ALJ provided a number of other reasons for impugning the credibility of Williams' pain allegations which Williams does not contest on review. These include findings that despite his allegedly debilitating shoulder pain, Williams reports he has somehow retained the ability to golf, one of Williams' providers expressed concern about secondary gain motivation, and despite allegations of disabling concentration deficits, he reads novels for pleasure. *See* Tr. 17-18. The ALJ also noted Williams' pain complaints were not consistent with a number of objective medical findings. *Id.* Williams has therefore waived argument on these issues. Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall credibility determination. *Batson*, 359 F.3d at 1196. Thus, on this record, the ALJ adequately impugned Williams' complaints of disabling pain.

**II. Lay Witness Testimony**

Lay witness testimony regarding the severity of a claimant's limitations is generally competent evidence that an ALJ must consider. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to reject lay witness testimony as to a claimant's limitations, an ALJ must provide reasons germane to each witness. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). However, where, as here, the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony and the lay witness has not described limitations beyond those alleged by the claimant, the failure to provide germane reasons for rejecting lay witness testimony is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

The ALJ commented on both the third-party function report submitted by Williams' wife, and the separate letter she submitted post-hearing. Tr. 16. Regarding the third-party report, the ALJ found that its contents were substantially similar to the adult function report submitted by Williams. The ALJ found that the limitations set forth in the report did not establish limitations beyond those outlined in the RFC.

Williams argues that the ALJ erroneously rejected the limitations in the third-party report because several of the limitations were beyond the scope of the RFC, including difficulty performing some personal care tasks and household chores, and struggles with pain that cause impairments in concentration, attention, and memory. Pl.'s Br. 16. However, the ALJ reasonably accounted for the level of limitation she described, as the RFC includes significant accommodation for his right shoulder impairment, and contemplates deficits in understanding, remembering, and carrying out tasks due to pain by limiting him to simple work. Tr. 15.

Williams further argues that the ALJ failed to account for limitations that Ms. Williams noted relating to Williams' alleged migraine headaches, including the need to recline and take naps. However, the ALJ rejected similar allegations regarding migraines in her credibility analysis. There, the ALJ found that although Williams alleged frequent and debilitating migraines, he had not pursued one of the most common conservative treatments for migraines, the medication Topamax. Tr. 14, 17, 35-36. Instead, Williams testified that he treats migraines by taking Excedrin and caffeine, in the form of Red Bull beverages. Accordingly, any error in failing to discuss the allegations with regard to Ms. Williams' testimony was harmless. *Molina*, 674 F.3d at 1122.

///

///

**III. Migraine Headaches**

Williams further argues that the ALJ generally failed to account for limitations arising from his migraine headaches in formulating the RFC. Specifically, Williams contends that the limitation to work involving no more than "simple instructions" failed to capture symptoms of his migraine headaches. In support, Williams explains that his migraines interfere with his "exertional abilities," they require him to take breaks in his recliner with his eyes closed, and that chemical exposure would exacerbate any migraine and cause excessive absenteeism.[2] Pl.'s Br. 6.

The ALJ included chronic migraine headaches as a severe impairment in her decision. Tr. 12. Consistent with the ALJ's assertion that migraines could interfere with cognitive and exertional abilities, the ALJ's RFC formulation limited him to less than a full range of light work including numerous restriction to address his pain complaints, and no more than simple instructions. Further, as discussed *infra*, the ALJ identified a sedentary job that Williams could perform at step five. Tr. 19. Further eliminating any doubt regarding the propriety of the ALJ's analysis, treating physician Richard Hindmarsh, M.D., opined that Williams did *not* need to lie down at unpredictable intervals during the day. Tr. 254.

Williams also submits that the ALJ "rejected out of hand" Dr. Hindmarsh's opinion that he would likely miss more than four days per month due to migraine symptoms. Pl.'s Br. 6-7. The argument is without merit because the ALJ explicitly addressed the opinion, stating: "Concerning expected absences, there is nothing of record such as failed work attempts to support this provision." Tr. 18. The ALJ's finding was supported by Williams' testimony at the hearing, where Williams described a number of prior temporary jobs that he held prior to his

---

[2] Williams' assignment of error regarding chemical exposure as it relates to migraine headaches is taken up in Section IV, *infra*.

8 - OPINION AND ORDER

onset date but well after his first shoulder surgery, and none of which ended because of Williams' alleged symptoms.

As such, none of the assignments of error regarding Williams' migraine symptoms are sufficient to disturb the ALJ's rationales. *Batson*, 359 F.3d at 1193.

**IV. Step Five, Other Work**

At step five of the sequential evaluation process, the burden of proof shifts to the Commissioner to identify other work in the national economy that a claimant is able to perform, considering his age, work experience, and RFC. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). In making the determination, the ALJ may rely on an impartial VE to provide testimony about jobs the applicant can perform despite his limitations. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). The VE's analysis is typically guided by the *Dictionary of Occupational Titles* (*DOT*). *Gutierrez v. Colvin*, 844 F.3d 804 (9th Cir. 2016). "If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [*DOT*], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Id.* (citing SSR 00-4p, 2000 WL 1898704, at *2).

As a threshold matter, the Commissioner concedes that two of the three jobs the ALJ identified at step five were erroneous: "final inspector of hand packaging processes" and "parking toll collector." Def.'s Br. 15. The Commissioner maintains, however, that the ALJ did not err in identifying the job of "loader, semiconductor dies." For the reasons that follow, the Court agrees that ALJ's finding was not erroneous.

Williams argues that the job of semiconductor die loader as described in the *DOT* is different than the VE's description of it. Indeed, there appears to be a substantial difference. The *DOT* description of loader, semiconductor dies:

> Loads dies, using vacuum wand, into carriers that hold and protect dies during fabrication of semiconductor packages: Pours dies from container onto filter paper. Picks up and placed dies circuit-side up in indentations in carrier, using vacuum wand. Secures lid on carrier, using manual pressure. May clean dies prior to loading, using solutions and cleaning equipment. May sort semiconductor devices to remove defective devices marked in inspection department.

*DOT*, # 726.687-030, *available at* 1991 WL 679937. The VE, in contrast, explained, "[the] equipment is automated. [The semiconductor die loaders] monitor the loading process and watch the gauges and switches." Tr. 50. The VE further characterized the job as "visual, overseeing, checking." Tr. 52. Although Williams asserts that the VE did not report the conflict between the *DOT* description of the job and his own understanding of it, the record reflects that the VE both noted the inconsistency and elaborated on it, noting than an individual could perform tasks with one arm, even assuming the arm was non-dominant, because the processes described in the description are now automated. Tr. 50-51. Accordingly, the inconsistency between the VE's testimony and the *DOT* description was adequately addressed.

Williams further argues that the *DOT* description for semiconductor die loader requires constant reaching, handling, and fingering, which is inconsistent with his RFC. The VE explained, however, that the job could be performed even if the worker was limited to reaching, pushing and pulling, with the non-dominant arm. Tr. 51. The VE indicated the deviation from the *DOT*, and stated that his testimony was based on his analysis of the job. *Id.* As such, the VE identified the conflict between his testimony and that of the *DOT*, and provided relevant information to reconcile the discrepancy prior to the ALJ's reliance on it. The Court notes further that the semiconductor die loader job is classified as sedentary; thus, removing automation from the equation, the job requires physically manipulating no more than ten pounds at a time. 20 C.F.R. § 416.967(a). Considering the added assistance of automated processes, there is no indication that Williams would be required to use his non-dominant hand to reach, handle, or

finger, based on the testimony of the VE. The ALJ adequately resolved the apparent inconsistency.

Moreover, the RFC reflects that when Williams' non-dominant arm is "supported close to his body," he was not limited at all in handling, fingering, or feeling. Although Williams argues that there is "no explanation what the functional limitation for 'supported close to the body" entails, the argument is inapposite, based on the testimony of the VE that the position could be adequately performed with one arm, even assuming the arm was non-dominant.

Similarly, Williams argues, albeit with regard to the job of toll collector, that the ALJ failed to account for diminished productivity if a hypothetical worker was limited to using only one arm. Pl.'s Br. 14-15. Although the ALJ and VE did not explicitly invoke the term "productivity" during the hearing, the VE clearly stated that, "[f]olks seem to manage quite well in these occupations and there's [sic] several others that are similar with a stationary work area, a [non] dominant arm that can handle the task." Tr. 51. The VE's assertion, in context, is consistent with his opinion that the semiconductor die loader job could be adequately performed based on Williams' RFC. *Id.* Further, to the extent the issue of productivity represents a conflict, the conflict is not "obvious or apparent," particularly considering the VE's statements about the adequacy of a limitation to a single upper extremity. *See Gutierrez*, 844 F.3d at 808. Because the ALJ was entitled to rely on the VE's experience in his field to account for the job at issue, he did not err by failing to inquire explicitly about productivity requirements. *See id.* at 809.

Finally, Williams argues the ALJ failed to resolve an apparent conflict between the *DOT* and the VE testimony with regard to exposure to toxic chemicals. Specifically, Williams contends that Dr. Hindmarsh limited him to "avoid concentrated exposure" to chemicals, while the *DOT* contemplates that the semiconductor die loader job entails "occasional" exposure to

toxic or caustic chemicals. *See* Tr. 255; *DOT* # 726.687-030. As noted above, however, in order for an apparent conflict to be cognizable, it must be obvious or apparent. *Gutierrez*, 844 F.3d at 808. While Dr. Hindmarsh indicated Williams should avoid "concentrated exposure" to chemicals, he declined to opine that Williams should avoid "moderate exposure" or "no exposure" to chemicals. Tr. 255. Accordingly, because the VE's testimony was not obviously or apparently contrary to the *DOT*, the ALJ's duty to resolve the issue was not triggered. *Gutierrez*, 844 F.3d at 808; *see also Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (requirement for an ALJ to ask follow up questions is fact-dependent). Here, the record contains substantial evidence that Williams can tolerate up to moderate exposure to chemicals, which is not obviously at odds with "occasional" exposure. Tr. 255. Considering the VE's testimony that the workplace tasks of the semiconductor die loader are now automated, the likelihood of an apparent conflict is even further diminished. The ALJ did not err.

## **CONCLUSION**

The ALJ's decision is free of harmful legal error and is supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this  9th   day of April 2018.

                                                    s/Michael J. McShane\_
                                                    Michael McShane
                                               United States District Judge